1

2

3                        UNITED STATES DISTRICT COURT

4                       NORTHERN DISTRICT OF CALIFORNIA

5

6

7    GREGORY M. MCCARTHY

8                    Petitioner,              No. C 04-2458 PJH (PR)

9      vs.                                    **ORDER DENYING PETITION
                                              FOR WRIT OF HABEAS
10   MATTHEW C. KRAMER, Warden,               CORPUS**

11                    Respondent.
     _____/
12

13          This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. §

14   2254.  The court ordered respondent to show cause why the writ should not be granted.

15   Respondent has filed an answer and a memorandum of points and authorities in support of

16   it, and has lodged exhibits with the court.  Petitioner has responded with a traverse.  The

17   matter is submitted.

18                                    **BACKGROUND**

19          Petitioner was convicted by a jury of one count of arson of an inhabited structure.

20   Petitioner was also convicted of one count of presenting a false and fraudulent insurance

21   claim.  The trial court sentenced petitioner to seventeen years in state prison.  As grounds

22   for habeas relief petitioner asserts that: (1) his due process rights were violated by

23   admission of evidence of his threats to his wife and her lawyer; (2) his free speech and due

24   process rights were violated by admission of certain evidence of various books he

25   possessed; (3) his Confrontation Clause and due process rights were violated by admission

26   of certain evidence from petitioner's former girlfriend and his nephew, and by the trial

27   court's limits on his cross-examination of them; (4) his due process and jury trial rights were

28   violated by the trial court's refusal to explicitly instruct the jury that in evaluating credibility it

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

could consider whether a witness was testifying under a grant of immunity; (5) his due process rights were violated by the trial court's jury instruction defining "reasonable doubt;" (6) his due process rights were violated by the trial court's giving CALJIC 17.41.1, which instructs the jurors to report if any juror refuses to deliberate or expresses an intention not to follow the law or to decide the case on any improper basis; (7) his trial counsel was ineffective in specified ways; and (8) the above "errors" cumulatively denied petitioner a fair trial.

## FACTUAL BACKGROUND

Petitioner does not dispute the following facts, which are excerpted from the opinion of the California Court of Appeal:

Prosecution Case: Studio Fire/Insurance Fraud

In 1991, defendant assumed the ownership of the Karate Studio (Studio) and purchased a commercial building in Mountain View to house the school. Defendant obtained a mortgage on the building from Silicon Valley Bank. In December 1993, defendant stopped making the mortgage payments and the bank initiated foreclosure proceedings. Despite the foreclosure, the bank agreed to let the school remain in the building for another year.

In the fall of 1994, defendant had a falling out with one of the instructors and the instructor quit the Studio. Shortly thereafter, nearly one-half of the remaining instructors left, taking their students with them. More than one person testified that the Studio was not profitable because the mortgage payments were too high.

In the fall of 1994, defendant's nephew, Michael McCarthy, Jr., (Michael) worked at the Studio. At the time, he owed defendant $4,000 on a vehicle defendant had purchased for him. In November 1994, defendant started joking with Michael about burning down the Studio. What started as a joke became more serious. Toward the end of November 1994, defendant offered to forgive Michael's debt if Michael would burn down the Studio. . . .

Michael was tempted by defendant's offer. Michael, a recovering alcoholic/drug addict, discussed the offer with his Alcoholics Anonymous sponsor. After talking with his sponsor, Michael decided to refuse defendant's offer. However, he agreed to defendant's request that their conversations regarding the offer remain confidential.

On December 24, 1994, defendant told the karate instructors at the Studio to remove their belongings from the locker room so that it could be cleaned. He also told Michael not to visit the Studio during the holiday break. On January 1, 1995, instructors who attempted to work out at the Studio discovered that the locks had been changed. At the end of December 1994, defendant removed several items of personal property from the Studio and placed them in storage.

United States District Court

For the Northern District of California

1    At about 1:00 a.m. on January 2, 1995, a passerby saw smoke coming
2    from the Studio and called 911.  The fire, which was confined to the center of
     the building, was extinguished.  The firefighters determined that the blaze was
3    intentionally set.  Arson investigators found three incendiary devices, only one
     of which had detonated.  An investigation ensued and defendant became a
4    suspect.

5        . . . .

6        In November 1995 the police suspended the investigation of the Studio
     fire because they were unable to confirm a suspect.

7        On April 15, 1996, defendant filed a sworn statement with the Hartford
8    Insurance Company (the Hartford), claiming losses of $171,980.42 as a result
     of the Studio fire.  As of August 1996, the Hartford had paid defendant $2,947
9    for the restoration of art and furniture, $10,200 for undisputed business
     income loss, and $20,658.50 for undisputed personal property loss.  In
10   December 1996, the Hartford paid defendant $48,500 in settlement of the
     remaining disputed claims arising out of the fire.  The Hartford paid a total of
11   $82,305.50 to defendant.  At trial, there was testimony that defendant had
     overvalued the items in his insurance claim and that some of the items, which
12   defendant claimed were destroyed, were later seen on his property.

13   Prosecution Case: Danaher Fire

14       In the spring of 1996, defendant's wife, Kim McCarthy (Kim), decided
     to file for divorce.  Defendant was opposed to the divorce and tried to
15   dissuade Kim from hiring an attorney.  About this time, defendant started a
     romantic relationship with Robin Mann, a nurse who had just started law
16   school at Santa Clara University.

17       In July 1996, Kim retained James Danaher to represent her in the
     divorce.  Kim moved out of the couple's Portola Valley home.  After Kim
18   moved out, Mann stayed with defendant every other week, when he did not
     have custody of his children.  According to Mann, defendant frustrated
19   Danaher's efforts to resolve the divorce by refusing to accept mail, turning off
     his fax machine, and refusing to return telephone calls.  Defendant viewed
20   Danaher as an obstacle to his efforts to obtain a favorable settlement of the
     divorce action and told Mann that he really wanted to get rid of Danaher.
21   Defendant bragged to Mann that he had interviewed all of the divorce
     attorneys in the area to create a conflict of interest so that Kim could not
22   obtain new counsel once Danaher was off the case.

23       In December 1996, defendant bought 30 books on incendiary devices,
     timers, detonators, bypassing alarm systems, and other topics that he kept in
24   a box by his bed.  According to Mann, defendant read the books all the time;
     he bragged that he had read each one from cover to cover at least twice.
25   One day, while discussing the divorce and Danaher, defendant told Mann that
     "he could burn down his house or blow someone up."  Defendant threatened
26   to "take care of" Danaher on two other occasions.

27       On two separate occasions in December 1997 and January 1998,
     defendant attempted to run Kim's car off the road when he encountered her
28   near his home.  On January 15, 1998, defendant told Danaher that he could
     get rid of Danaher or Kim for $5,000.  That same day, Danaher served

3

**United States District Court**
For the Northern District of California

defendant with a Notice of Unavailability, advising him that he would be out of town on vacation from January 15, 1998, until February 1, 1998.

The Danahers had arranged for two young women to stay in the guest quarters over their garage while they were away on vacation. The house sitters' last night in the guest quarters was Thursday, January 29, 1998. One of them returned Friday evening to feed the cat. Before she left, she checked to make sure the doors to the house were locked and left the garage door open two feet at the bottom so that the cat could enter, as instructed by the Danahers. At various times on Friday, January 30, 1998 and Saturday, January 31, 1998, two of Danaher's neighbors saw a distinctive red sports car parked in Danaher's driveway. Both neighbors picked defendant's red Mitsubishi out of a photo line-up.

Mann had invited defendant to dinner both Friday and Saturday nights, January 30 and 31, 1998. Defendant was late both nights. He also spent both nights at Mann's apartment, which was unusual. On Friday night, defendant told Mann that he had been conducting "night maneuvers," which he had described as doing "sneaky things."

At approximately 3:20 a.m. on February 1, 1998, the Danahers' neighbors were awakened by noises and saw flames rising above the Danahers' home. By the time firefighters arrived, the house was 85 to 90 percent engulfed in flames. The house was completely destroyed. At trial, the parties' stipulated that the monetary loss from the fire exceeded $1 million. Arson investigators subsequently determined that the fire was started by a timing device, which had been plugged into an electrical outlet in the crawl space under the house. The timer was connected to an ignition device by an extension cord. The ignition device, in turn, ignited a gas-soaked rag sticking out of a gas can. The device used to start the Danaher fire was very similar to the device that had been used to start the Studio fire. Because of the similarities between the two devices, authorities reopened the investigation into the Studio fire.

After the Danaher fire, Mann lied to police investigators about the times that defendant arrived and left her apartment on the two days before the fire. In the weeks that followed the Danaher fire, defendant made several statements to Mann that indicated that he was involved in the fire.

On February 27, 1998, Michael spoke with sheriff's deputies. He denied any knowledge of either fire . . . . He did not tell them about defendant's offer to forgive the debt if he burned down the Studio and told investigators that defendant was not involved. Two days later, defendant asked Michael whether he had set the Studio fire. Michael was shocked and believed that defendant was going to frame him for the Studio fire. Michael met with arson investigators on May 1, 1998. Once again, he denied knowing anything about either fire and said that defendant was not involved. At trial, he admitted that he lied to investigators on both occasions.

During the latter half of 1998, defendant's relationship with Mann soured. On different occasions, he threatened to report her to her law school for ethical violations, to hire someone to rape her, and to "come after her" if he ever went to jail. Mann finally told investigators that on the two nights before the fire, defendant had arrived at her apartment much later than she had previously claimed and that he had left much earlier each of the following

1   mornings.  She also changed her story about the vehicle that defendant was
2   driving on the dates in question.  She had previously told them it was a Jeep.
    She later told them it was the red Mitsubishi. . . .

3       In March 1999, Michael was subpoenaed to testify at defendant's
4   preliminary hearing.  Michael did not want to lie under oath and retained an
    attorney.  His attorney negotiated an agreement with the district attorney that
5   provided that Michael would be immune from prosecution for his previous
    false statements to investigators.  Michael then told investigators about
6   defendant's offer . . . and statements defendant made to Michael about the
    Studio fire and the investigation.

7   Defense Case

8       Defendant testified and denied setting either fire or making a false
9   insurance claim.  He disputed Kim's and Danaher's accounts of events that
    occurred during the divorce.  Defendant vigorously attacked Mann's
    credibility.  He presented evidence of her "mental and emotional instability,
10  and of bizarre and threatening behavior in which she engaged during the
    course of their stormy on-again, off-again relationship."  He also attacked
11  Michael's credibility.  He had an explanation for almost all of the evidence that
    was introduced by the prosecution.
12

13  Ex. C (opinion of Court of Appeal) at 2-7.

14                          **STANDARD OF REVIEW**

15      A district court may not grant a petition challenging a state conviction or sentence on

16  the basis of a claim that was reviewed on the merits in state court unless the state court's

17  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

18  unreasonable application of, clearly established Federal law, as determined by the

19  Supreme Court of the United States; or (2) resulted in a decision that was based on an

20  unreasonable determination of the facts in light of the evidence presented in the State court

21  proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

22  mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000),

23  while the second prong applies to decisions based on factual determinations, *Miller-El v.*

24  *Cockrell*,  537 U.S. 322, 340 (2003).

25      A state court decision is "contrary to" Supreme Court authority, that is, falls under the

26  first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

27  reached by [the Supreme] Court on a question of law or if the state court decides a case

28  differently than [the Supreme] Court has on a set of materially indistinguishable facts."

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application

2   of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

3   identifies the governing legal principle from the Supreme Court's decisions but

4   "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The

5   federal court on habeas review may not issue the writ "simply because that court concludes

6   in its independent judgment that the relevant state-court decision applied clearly

7   established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must

8   be "objectively unreasonable" to support granting the writ. *Id.* at 409.

9          Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

10   determination will not be overturned on factual grounds unless objectively unreasonable in

11   light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at

12   340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

13          When there is no reasoned opinion from the highest state court to consider the

14   petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*,

15   501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th

16   Cir.2000).

17                                        **DISCUSSION**

18   **A.     Procedural Default**

19          Respondent contends that issue one through four are procedurally defaulted.  The

20   California Court of Appeal held that error had not been preserved as to these issues

21   because petitioner's lawyer's objections at trial did not include the constitutional grounds.

22   Ex. C (opinion of Court of Appeal) at 15, 21, 28, 34.  The Ninth Circuit has recognized and

23   applied the California contemporaneous objection rule in affirming denial of a federal

24   petition on grounds of procedural default where there was a complete failure to object at

25   trial. *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371

26   F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir.

27   1999).  Respondent, therefore, is correct that these issues are procedurally defaulted, and

28   because petitioner has not shown cause and prejudice or a miscarriage of justice, *see*

United States District Court

For the Northern District of California

1    *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), the first four issues are barred.  The

2    court will, however, alternatively consider the claims on the merits.

3    **B.     Admission of Evidence of Verbal Threats and Threatening Conduct**

4            Petitioner argues that the trial court's admission of evidence of verbal threats and

5    threatening conduct towards his wife and her attorney during the divorce proceedings

6    violated his due process rights.

7            The trial court found certain statements relevant, and therefore admissible under

8    California Evidence Code section 1101.  The California Court of Appeal, relying on state

9    law, upheld the trial court's decision.  Ex. C at 8-15.  It also held that the state and federal

10   due process claims were waived because they were not raised in the trial court, and

11   because petitioner had not provided any authority that admission of wrongful acts can

12   violate due process.  *Id.* at 15-16.

13           The admission of evidence is not subject to federal habeas review unless a specific

14   constitutional guarantee is violated or the error is of such magnitude that the result is a

15   denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197

16   F.3d 1021, 1031 (9th Cir. 1999).  Failure to comply with state rules of evidence is neither a

17   necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

18   *Id.*; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  While adherence to state

19   evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is

20   certainly possible to have a fair trial even when state standards are violated; conversely,

21   state procedural and evidentiary rules may countenance processes that do not comport

22   with fundamental fairness.  *Id.* (citing *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983),

23   *cert. denied*, 469 U.S. 838 (1984)).  The due process inquiry in federal habeas review is

24   whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial

25   fundamentally unfair.  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).  Only if there

26   are no permissible inferences that the jury may draw from the evidence can its admission

27   violate due process.  *Jammal*, 926 F.2d at 920.

28           As to whether the admission of evidence of petitioner's verbal threats and

7

**United States District Court**
For the Northern District of California

threatening conduct was so arbitrary or prejudicial that it rendered the trial fundamentally unfair, as the state appellate court stated, the evidence was not offered to prove petitioner's disposition to commit such acts, but instead, to prove "motive, intent, and the willful and malicious nature of the act."  The evidence was relevant to support an essential element of the arson charge, i.e., malice; therefore, there was a permissible inference the jury could draw from the evidence.  *See id.*  The evidence also portrayed petitioner's motive and intent for the crimes, another permissible inference.  *See id.*  Accordingly, petitioner has failed to show he was denied a fair trial.

In the alternative, any error in admitting this evidence was harmless under *Brecht*. In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was one of constitutional dimension and that it was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  He would have to show that the error had "'a substantial and injurious effect' on the verdict.'"  *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting *Brecht*, 507 U.S. at 623).  In addition to the challenged evidence, there was other evidence offered to prove petitioner's negative response to the divorce:

> Kim testified that defendant reacted angrily when she first told him she wanted a divorce.  He did not want a divorce and did not want her to see an attorney.  He begged her not to serve him personally and asked that he be allowed to pick up the petition at her attorney's office.  A couple of days later, he filed his own petition and had her personally served at home while he watched from the bushes.  Kim also testified that defendant pressured her repeatedly to settle the case without an attorney and told her, in a threatening tone that she had "better settle," and that "he wouldn't go to court."  When Kim confronted him about having books on incendiary devices, he reassured her that he would not harm her or their children, but said there were some attorneys he "would like to take care of."
>
> Danaher testified that he had difficulty communicating with defendant from the time defendant started representing himself in the summer of 1997 until the time of the fire.  Danaher testified about a settlement meeting with defendant in September 1997.  Defendant angrily accused Danaher of prolonging the case to collect more fees.  When Danaher suggested defendant could sue him, defendant responded: "I won't sue you, I will take care of you."  In January 1998, Danaher met with defendant again to discuss settlement.  At that time, Danaher served defendant with an order to show cause regarding several items of property that were at issue in the divorce.   Danaher also placed a lis pendens on three properties defendant owned until it was determined whether they were part of the marital community.  Defendant wanted to sell one of the properties and was not happy about the lis pendens.

8

1    During this meeting, defendant stated that he had considered suicide, but
     there were people he wanted to take care of first.
2

3  Ex. C at 8-9.  Given this extensive evidence, it cannot be said that there is a reasonable

4  probability that the admission of the statements had a substantial and injurious effect on the

5  verdict.

6        In contending that his due process rights were violated by admission of this evidence

7  petitioner relies in part on *Hicks v. Oklahoma*, 447 U.S. 343 (1980).  In *Hicks* the Supreme

8  Court held that it violated due process for the trial court to give a jury instruction based on

9  an invalid state law mandatory sentence provision.  *Id.* at 345.  Without any significant

10 analysis, the Court concluded that the question was not merely one of state procedural law.

11 *Id.* at 346.  Unlike *Hicks*, where there was state law error, in this case the state courts have

12 determined that there was no state law violation, and that determination is binding on this

13 court.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629

14 (1988).   As a result, *Hicks* is irrelevant.

15       As noted above, this claim is procedurally defaulted.  Alternatively, there was no

16 constitutional violation for the reasons discussed above.  The state courts' rejection of this

17 claim was not contrary to, or an unreasonable application of, clearly-established United

18 States Supreme Court authority.

19 **C.    Admission of Evidence that Petitioner Possessed Books About Incendiary**

20 **Devices and Divorce Tactics**

21       Petitioner argues that his free speech and due process rights were violated by the

22 trial court's admission of evidence that books on incendiary devices were found during the

23 search of his residence.

24       The trial court admitted the titles of ten of the thirty books actually found and held

25 that the only admissible portions of the contents would those which "would correlate to the

26 evidence found at either fire ... but only those portions of the books,' subject to further

27 hearing."  Ex. C at 16.  Relying on state law, the appellate court held that the titles of the

28 books were relevant to the issues of the case, that the restricted use of the book titles and

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   content as evidence was unlikely to "inflame the jury," and that any possible error regarding

2   the admission of these titles was harmless given the existing testimony of Kim and

3   petitioner's ex-girlfriend, Mann.  *Id.* at 18-21.

4       The court has held above that this claim is procedurally defaulted, but in addition will

5   consider it on the merits.

6       **1.   First Amendment**

7       It does not violate a defendant's First Amendment rights to use his or her reading

8   material as evidence.  *United States v. Curtin*, 489 F.3d 935, 955-56 (9th Cir. 2007) (en

9   banc) (plurality opinion).  As an alternative ground to the procedural bar, therefore, the

10  court concludes that petitioner's constitutional rights were not violated.

11      **2.   Due Process**

12      Petitioner contends that admission of the titles and contents of the books violated

13  due process.  Only if there are no permissible inferences that the jury may draw from the

14  evidence can its admission violate due process.  *See Jammal v. Van de Kamp*, 926 F.2d at

15  920.

16      The books provided independent corroboration of Kim's and Mann's testimony about

17  petitioner's possession and reading of the books and his intent to use the knowledge he

18  gained from them to burn Danahar's house down.  Therefore, there was a permissible

19  inference for the jury to draw from this evidence.  And, as discussed above, petitioner's

20  reliance on *Hicks v. Oklahoma* is misplaced because there was no state law violation.

21      Furthermore, any error was harmless because admission of the titles of ten books

22  and the content of one of the books, where two witnesses had already testified to his

23  possession of such books, could not have had a substantial and injurious effect on the

24  verdict under *Brecht*.

25      As an alternative ground to the procedural bar, the court concludes that petitioner's

26  constitutional rights were not violated.

27  ///

28  **D.   Evidentiary Rulings Regarding the Testimony of Mann and McCarthy Jr.**

10

**United States District Court**
For the Northern District of California

1    Petitioner argues that the trial court violated his rights to due process and

2    confrontation in two instances: 1) refusing to permit defense cross-examination of Mann

3    with evidence of a prior misdemeanor charge, and 2) refusing to permit Michael to be

4    impeached with his prior inconsistent statements.  Petitioner also argues that the trial court

5    violated his right to due process in two additional instances: 1) allowing Mann to explain her

6    telephone messages to petitioner and 2) allowing Michael to testify to his opinion about

7    petitioner's reasons for suggesting that Michael stay away from the karate studio on the

8    weekend of the fire.

9         **1.     Exclusion of Evidence**

10             **a.     Criminal Charges Against Robin Mann**

11    The state appellate court upheld the trial court's decision to exclude evidence of

12    criminal charges filed against Mann arising out of an allegedly false emergency call she

13    made.  Ex. C at 22.  Mann called 911, identified herself as Kim, and reported that petitioner

14    had left a message on her answering machine threatening to commit suicide.  *Id.*  She was

15    charged with making a false report of an emergency, but the charges were dropped.  *Id.*

16    The trial court found the evidence "very slightly relevant" to the issue of Mann's credibility

17    but excluded the evidence because it would be too time consuming to try the misdemeanor

18    false report case within the arson case.  *Id.* at 23.

19    As to the constitutional issue, the court of appeal concluded that it had not been

20    preserved, as discussed above, and alternatively held that if it was preserved, it was

21    without merit because petitioner was not completely prevented from impeaching the

22    witnesses.  *Id.* at 28-29.

23    Exclusion of evidence may violate a defendant's constitutional rights even if the

24    exclusion is proper under state evidentiary rules.  *Murdoch v. Castro*, 365 F.3d 699, 702

25    (9th Cir. 2004).  In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court held

26    that the defendant was denied a fair trial when the state's evidentiary rules prevented him

27    from calling other witnesses who would have testified that the first witness made

28    inculpatory statements on the night of the crime.  Similarly, in *Crane v. Kentucky*, 476 U.S.

11

United States District Court
For the Northern District of California

683, 690-91 (1986), the Court held that the defendant's right to have a fair opportunity to present a defense, whether rooted in the Fourteenth Amendment's Due Process Clause or in the Sixth Amendment's confrontation or compulsory process clauses, is violated by a trial court's exclusion of competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. *See also Rock v. Arkansas*, 483 U.S. 44, 56-62 (1987) (holding unconstitutional Arkansas per se rule excluding all hypnotically enhanced testimony). The Ninth Circuit has summarized the rule as "states may not impede a defendants's right to put on a defense by imposing mechanistic (*Chambers*) or arbitrary (*Rock*) rules of evidence." *LaGrand v. Stewart*, 133 F.3d 1253, 1266 (9th Cir. 1998). The rule is clearly established federal law under 28 U.S.C. § 2254(d) and a proper basis for federal habeas relief. *See, e.g.*, *Greene v. Lambert*, 288 F.3d 1081, 1093 (9th Cir. 2002)

The right to present a defense is not absolute, however. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988). The accused's compulsory process rights may be limited by evidentiary rules, *see Perry v. Rushen*, 713 F.2d 1447, 1453-54 (9th Cir. 1983) (no violation of compulsory process to prohibit evidence of third party identity because evidence collateral and state interest in evidentiary rule overriding), and by the state's legitimate interest in efficient trials, *see United States v. King*, 762 F.2d 232, 235 (2d Cir. 1985) (no compulsory process clause violation when trial court denied motion for continuance to permit defense witness to testify because defendant made neither timely request for witness production nor "eleventh hour" request on expedited basis). Nor does the Due Process Clause guarantee the right to introduce *all* relevant evidence to present a defense. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The exclusion of evidence does not violate the Due Process Clause unless "'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* at 43 (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)).

///

The question, then, is whether the exclusion here was "mechanistic" or "arbitrary."

United States District Court

For the Northern District of California

1   *See LaGrand*, 133 F.3d at 1266 (summarizing Supreme Court cases).  Here, excluding

2   evidence of Mann's prior misdemeanor charge was not a result of rigid application of

3   mechanistic or arbitrary rules of admissibility.  The trial court believed that there was a

4   factual issue as to whether the 911 report was, in fact, false.  While Mann admitted to using

5   Kim's name, she maintained that petitioner had called her threatening suicide.  Petitioner,

6   on the other hand, denied leaving such a message.  Because presentation of this evidence

7   would have required the jury to determine whether the charges against Mann were true or

8   false, the trial court excluded the evidence on the premise that its probative value was

9   outweighed by the probability that its admission would "necessitate undue consumption of

10  time."  *See* Cal. Evid. Code § 352.  This was not a mechanistic or arbitrary application of

11  the rule in that it required the court to conduct a balancing test, which it did.   Furthermore,

12  petitioner's reliance on *Hicks v. Oklahoma* is misplaced as there was no state law violation.

13      Even if the exclusion of the evidence did violate the Confrontation Clause or due

14  process, it was harmless under *Brecht*.  The trial court's ruling did not completely prevent

15  petitioner from presenting his defense that Mann should be disbelieved because she was

16  an unstable liar.  During direct and cross-examination, Mann admitted she had repeatedly

17  lied to the police, RT 1300-21, had been handcuffed and placed in a patrol car during a

18  scuffle at petitioner's doorstep, RT 1496-98, had attempted suicide, RT 1399, had assisted

19  petitioner in obtaining the addresses of his intended victim, RT 1380, and had engaged in

20  numerous other bad acts based on her unhealthy romantic attachment to petitioner.  RT

21  1483-87.  In light of this record, petitioner cannot successfully claim that the exclusion was

22  prejudicial.  The exclusion of the evidence did not render the trial unfair, nor did it have a

23  substantial or injurious effect on the verdict.

24      As discussed above, this claim is procedurally barred.  Alternatively, there was no

25  constitutional violation and no prejudice.

26  ///

27          **b.     Michael McCarthy Jr.'s Prior Inconsistent Statement**

28      The state appellate court concluded that it was a state law error to exclude Michael's

United States District Court

For the Northern District of California

1    prior inconsistent statement, but found it to be a harmless error.  Ex. C at 27-28.  Evidence

2    that Michael had previously told officers that he did not think petitioner was the kind of

3    person who would start a fire was inconsistent with his testimony that petitioner had offered

4    to forgive a $4,000 debt if Michael burned down the Studio.  *Id.*  The state court held that

5    any error was harmless given that the prosecutor had Michael testify on direct examination

6    that he had lied to investigating officers.  *Id.*  This testimony is very similar to that which

7    petitioner would have brought in if petitioner's counsel was permitted to ask his question.

8    The essence of the prior inconsistent statement was already before the jury through direct

9    examination of Michael.

10        The exclusion of the evidence did not render the trial unfair, nor did it have a

11   substantial and injurious effect on the verdict under *Brecht*.  The prior inconsistent

12   statement was introduced during direct examination, giving petitioner the opportunity to

13   cross-examine Michael on the matter.  Therefore, with the cross-examination and the

14   multiple admissions that Michael had lied to the police, it is not reasonably probable that a

15   result more favorable to petitioner would have been reached had petitioner inquired further

16   into this issue on cross.

17        Petitioner again relies on *Hicks v. Oklahoma*, but this time there was a state law

18   violation – sustaining the objection was error, the court of appeal held.  However,

19   erroneously sustaining an objection to testimony which did not differ much from evidence

20   already in the case is in no way comparable to the error in *Hicks*, where the court instructed

21   the jury, erroneously, that it was required to give the defendant a forty-year mandatory

22   sentence.  *See Hicks*, 447 U.S. at 344-45.  Even assuming for the sake of decision that

23   *Hicks* applies beyond the sensitive jury context, this claim does not rise to the level of a due

24   process violation.  *See Barclay v. Florida*, 463 U.S. 939, 957-58 (1983) (mere errors of

25   state law are not the concern of this court, unless they rise for some other reason to the

26   level of a denial of rights protected by the United States Constitution).

27        As discussed above, this claim is procedurally barred.  Alternatively, there was no

28   constitutional violation and the exclusion was not prejudicial.

United States District Court

For the Northern District of California

1

2. Admission of Evidence

2

    a.    Robin Mann's Testimony About Petitioner's Conduct

3      The state appellate court upheld the trial court's admission of Mann's testimony

4 regarding petitioner's conduct with other women. Ex. C at 24-25. Mann had left a number

5 of angry and jealous voice-mail messages for petitioner, which petitioner introduced to

6 impeach Mann. *Id.* The trial court permitted Mann to explain one of the messages left for

7 petitioner. *Id.* Petitioner argued that it was a hearsay violation for Mann to testify that she

8 told petitioner he had "just made another enemy" because a mutual acquaintance told

9 Mann that petitioner was hitting on and annoying a number of the acquaintance's female

10 friends. *Id.* The appellate court did not find the acquaintance's statements to Mann to be a

11 hearsay violation because the statements were not admitted for truth of the matter

12 asserted, but to explain Mann's use of the word "enemy" on her voice-mail message. *Id.*

13      As stated above, the due process inquiry in federal habeas review is whether the

14 admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally

15 unfair. See *Walters v. Maass*, 45 F.3d at 1357; *Colley v. Sumner*, 784 F.2d at 990. Only if

16 there are no permissible inferences that the jury may draw from the evidence can its

17 admission violate due process. See *Jammal v. Van de Kamp*, 926 F.2d at 920. Petitioner

18 would have to show that the error had "'a substantial and injurious effect' on the verdict.'"

19 *Dillard v. Roe*, 244 F.3d at 767 (quoting *Brecht v. Abrahamson*, 507 U.S. at 623).

20      In the instant case, petitioner had repeatedly questioned Mann about her voice mail

21 messages to him, RT 1328-42, and specifically asked Mann about messages concerning

22 her jealousy over his interactions with another woman during a party that both Mann and

23 petitioner attended. RT 1329-22, 1363, 1391-98, 1301, 1486-87. Petitioner suggested that

24 Mann's jealousy had triggered her decision to speak with the authorities, as opposed to her

25 sense of moral obligation. RT 1309, 2991. Petitioner encouraged Mann to speak about the

26 reasons she had left specific messages about petitioner and his attentions to another

27 woman. RT 3004-06. Therefore, the purpose of the redirect examination pertaining to why

28 Mann used the word "enemy" in her message, a message that petitioner repeatedly

United States District Court

For the Northern District of California

1    referenced during cross examination, was to provide context for why Mann had left such a

2    message.  RT 3029.  Evidence that petitioner had been hitting on and annoying women did

3    not result in a fundamentally unfair trial.  Even if error is found, however, no prejudice can

4    be shown in light of other testimony pointing to petitioner's guilt, petitioner's extensive

5    cross-examination of Mann regarding the taped messages, and his testimony that she was

6    a liar.  Petitioner's reliance on *Hicks v. Oklahoma* is also misplaced as there is no state law

7    violation.  447 U.S. at 346.

8        As discussed above, this claim is procedurally barred.  Alternatively, there was no

9    constitutional violation and the exclusion was not prejudicial.

10                    **b.    Michael McCarthy Jr.'s Testimony About Petitioner's Statement**

11        The trial court allowed Michael's opinion testimony about the underlying meaning of

12    petitioner's statement that Michael should not go to the Studio over the holidays.  Ex. C at

13    25-27.  When the prosecutor asked Michael if he asked petitioner why he should not go to

14    the Studio, Michael testified that he did not need an explanation because "it was implied

15    that the Karate Studio would be burning down, therefore it was not a good idea to be there

16    during the break."  *Id.* at 25-26.  Although technically afoul of state evidentiary rules, the

17    appellate court found the error harmless.  *Id.* at 26-27.

18        Michael's statement explained his conduct at the time, namely, his failure to ask

19    petitioner why he should not go to the Studio during the break.  Although a violation of state

20    law, the remainder of Michael's testimony made clear that Michael's opinion about why

21    petitioner told him to stay away was based solely on his own inferences and not on any

22    express statement by petitioner.  This isolated statement, clearly labeled as the witness's

23    inference, could not render the trial unfair.  Finally, prejudice under *Brecht* cannot be shown

24    in light of petitioner's extensive cross-examination of Michael, during which Michael

25    admitted to being a recovering alcoholic, being in debt to petitioner, and repeatedly lying to

26    and misleading the investigators after the studio fire.  RT 2062-2097.  And petitioner's

27    reliance on *Hicks v. Oklahoma* is also misplaced as there is no state law violation.  *Hicks*,

28    447 U.S. at 346.

United States District Court

For the Northern District of California

1    As discussed above, this claim is procedurally barred.  Alternatively, there was no

2 constitutional violation and the exclusion was not prejudicial.

3 **D.    CALJIC No. 2.20**

4    Petitioner argues that the trial court violated his right to due process by refusing to

5 modify CALJIC No. 2.20, the standard jury instruction listing factors that the jury is to

6 consider in assessing witness credibility, to include the phrase "whether the witness is

7 testifying under a grant of immunity."  The instruction did say that the jurors should consider

8 "anything that has a tendency in reason to prove or disprove the truthfulness of the

9 testimony of the witness," including the witness's "bias, interest or other motive."  Ex. C at

10 29 n.7.  The pattern instruction subsequently was modified to include the phrase petitioner

11 requested here.  *Id.* at 33.

12    The state appellate court found that any state law error was harmless, given that the

13 jury was made well aware of the witness's immunity through the prosecutor's opening

14 statement, petitioner's opening statement, the witness's testimony, and petitioner's closing

15 argument.  Ex. C at 33-34.  As to the constitutional claim, the court held that it was waived

16 because it was not raised as a basis for the objection, and that "even if the error had been

17 preserved, we do not see any violation of defendant's due process rights."  *Id.* at 34.

18    A state trial court's refusal to give an instruction does not alone raise a ground

19 cognizable in a federal habeas corpus proceedings.  *Dunckhurst v. Deeds*, 859 F.2d 110,

20 114 (9th Cir. 1988).  The error must so infect the trial that the defendant was deprived of

21 the fair trial guaranteed by the Fourteenth Amendment.  *Id.*  Whether a constitutional

22 violation has occurred will depend upon the evidence in the case and the overall

23 instructions given to the jury.  *Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).

24    The jury was told from the outset that Michael was testifying under a promise of

25 immunity.  RT 144-45, 174-75.  Michael testified about the immunity agreement in his direct

26 testimony.  RT 2050-52 2054.  He was extensively cross-examined about the immunity

27 agreement.  RT 2095-96.  Defense counsel argued that the immunity agreement

28 established Michael's bias and motive to frame petitioner.  RT 3890-97.  The jury was

United States District Court

For the Northern District of California

1     clearly aware of the effect of the immunity agreement related to Michael's testimony.

2          CALJIC No. 2.20 provided that the jurors were "the sole judges of the believability of

3     a witness and the weight to be given the testimony of each witness," and that the jurors

4     "may consider anything that has a tendency to prove or disprove the truthfulness of the

5     testimony of the witness, including but not limited to . . . [t]he existence or nonexistence of

6     bias, interest, or other motive."  RT 3657.  Due process does not require the trial court to

7     instruct on the defendant's precise theory of the case where other instructions adequately

8     cover that theory.  *Duckett*, 67 F.3d at 743-46.  CALJIC No. 2.20 sufficiently encompassed

9     the substance of petitioner's theory that Michael had a reason to testify falsely by calling on

10    the jurors to consider Michael's "bias, interest, or other motive" in assessing his

11    truthfulness.  In short, the trial court's refusal to give the altered instruction did not render

12    the trial fundamentally unfair, and thus did not violate due process.  And as before,

13    petitioner's reliance on *Hicks v. Oklahoma* is misplaced as there was no state law violation.

14    *Hicks*, 447 U.S. at 346.

15         As discussed above, this claim is procedurally barred by petitioner's failure to assert

16    it in the trial court.  Alternatively, there was no constitutional violation.

17    **E.     CALJIC No. 2.90**

18         Petitioner argues that the standard definition of reasonable doubt in CALJIC No.

19    2.90 (Rev. 1994) failed to adequately guide the jury regarding the degree of certainty

20    necessary for a finding of guilt, resulting in a due process violation.  Relying on California

21    precedent, the state appellate court upheld the 1994 revision of CALJIC No. 2.90 as

22    satisfying federal due process concerns.

23         The beyond a reasonable doubt standard is a requirement of due process, but the

24    Constitution neither prohibits trial courts from defining reasonable doubt nor requires them

25    to do so as a matter of course.  *See Victor v. Nebraska*, 511 U.S. 1, 6 (1994).  So long as

26    the trial court instructs the jury on the necessity that defendant's guilt be proven beyond a

27    reasonable doubt, the Constitution does not require that any particular form of words be

28    used in advising the jury of the government's burden of proof.  *See id.*  The 1994 version of

United States District Court

For the Northern District of California

1   CALJIC 2.90 was upheld in *Lisenbee v. Henry*, 166 F.3d 997, 999-1000 (9th Cir. 1999).

2   (use of term "abiding conviction" in defining reasonable doubt is constitutionally sound).  It

3   thus is clear that giving the instruction did not violate due process.

4   **F.    CALJIC No. 17.41.1**

5       Petitioner argues that the trial court  violated his right to due process by giving

6   CALJIC No. 17.41.1 and that such an instruction inhibits jury deliberation and invades jury

7   privacy.  CALJIC No. 17.41.1 provides:

8           The integrity of a trial requires that jurors, at all times during their
            deliberations, conduct themselves as required by these instructions.
9           Accordingly, should it occur that any juror refuses to deliberate or expresses
            an intention to disregard the law or to decide the case based on [penalty or
10          punishment, or] any [other] improper basis, it is the obligation of the other
            jurors to immediately advise the Court of the situation.

11

12      The Ninth Circuit has held that there is no "clearly established United States

13  Supreme Court precedent" which establishes that an anti-nullification instruction such as

14  CALJIC No. 17.41.1 violates a constitutional right.  *Brewer v. Hall*, 378 F.3d 952, 955-56

15  (9th Cir. 2004).  The court therefore held that a California appellate court's rejection of a

16  challenge to 17.41.1 could not be contrary to, or an unreasonable application of, clearly

17  established Supreme Court authority.  *Id.* at 956.

18      The state appellate court's rejection of this claim was not contrary to, or an

19  unreasonable application of, clearly established United States Supreme Court precedent.

20  **G.    Ineffective Assistance of Counsel**

21      Petitioner argues that his trial counsel provided ineffective assistance of counsel by

22  failing to raise the federal constitutional grounds for several of his claims, as discussed

23  above.  Because this claim was exhausted by way of a petition for a writ of habeas corpus

24  in the Supreme Court of California and that court denied it without comment, there is no

25  state court discussion of it.

26  ///

27      In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner

28  must satisfy a two-prong test.  First, he must establish that counsel's performance was

**United States District Court**
For the Northern District of California

1   deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing

2   professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial

3   scrutiny of counsel's performance must be highly deferential, and a court must indulge a

4   strong presumption that counsel's conduct falls within the wide range of reasonable

5   professional assistance.  *See id.* at 689.  Second, Petitioner must establish that he was

6   prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability

7   that, but for counsel's unprofessional errors, the result of the proceeding would have been

8   different."  *Id.* at 694.

9       This court has concluded above as to each of the unpreserved issues that there was

10  no constitutional violation; as a consequence, it would have been futile for counsel to have

11  argued constitutional grounds.  Counsel was not ineffective in failing to do so.  *See Rupe v.*

12  *Wood*, 93 F.3d 1434, 1445 (9t Cir. 1996) ("the failure to take a futile action can never be

13  deficient performance"); *Juan v. Allen,* 408 F.3d 1262, 1273 (9th Cir. 2005) (trial counsel

14  cannot have been ineffective for failing to raise meritless objections).  For the same reason,

15  counsel's failure to raise the constitutional grounds was not prejudicial.

16      The state appellate court's rejection of this claim was not contrary to, or an

17  unreasonable application of, clearly established United States Supreme Court precedent.

18  **H.   Cumulative Error**

19      Petitioner claims that the foregoing errors considered cumulatively warrant relief.

20      In some cases, although no single trial error is sufficiently prejudicial to warrant

21  reversal, the cumulative effect of several errors may still prejudice a defendant so much

22  that his conviction must be overturned.  *Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir.

23  2003).  But where there is no constitutional error, nothing can accumulate to the level of a

24  constitutional violation.  *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002); *Fuller v.*

25  *Roe*, 182 F.3d 699, 704 (9th Cir. 1999); *Rupe v. Wood*, 93 F.3d at 1445.  That is, less-than-

26  constitutional errors cannot be cumulated into constitutional error; cumulation applies to

27  prejudice, not to whether there was error.  Because there are was no constitutional error

28  here, there is nothing to cumulate.  This claim is without merit.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  March 31, 2008.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.04\McCARTHY458.RUL2.wpd